NEW YORK,
May, 1817

BRACKET
v.
M'NAIR.

<hr>

## BRACKET *against* M'NAIR.

In an action for the breach of a contract to transport goods from A. to B., the difference between the value of the goods at A., and their increased value at B. is a pro per measure of damages.

THIS was an action of *assumpsit*, which was tried before Mr. Justice *Yates*, at the *Onondaga* circuit, in June, 1816.

At the trial, a written agreement between the parties, made on the 19th *August*, 1809, was produced in evidence, by which the defendant agreed to forward for the plaintiff four hundred barrels of salt, the property of the plaintiff, then being in store with the defendant, marked *J. Brackett*, to *Queenston*, for one dollar per barrel for boating, storage, and freight, of the same, from *Oswego Falls* to *Queenston*; that the defendant was to receive the money for the freight on or before the 1st day of *February* thereafter, and that he would ship half of his salt the first trip his vessels should make, and the remainder the second trip, or sooner if possible. It was proved, that between the time of making the contract, and the time when the collector of *Oswego* had received information of the non-intercourse act of the *United States*, which was on the evening of the 30th of *August*, the defendant's vessels had sailed for *Niagara*, or *Little York*, without taking any part of the plaintiff's salt. The plaintiff also proved what was then the price of salt at *Oswego* and at *Queenston*.

The defendant proved by one *Richmond*, that the plaintiff had said, that he forwarded his salt to *Thomas Clark*, of *Queenston*, in the year 1809, and by *Hugarin*, another witness, that the witness in 1809 carried two hundred bushels of the plaintiff's salt, by his direction, to *Porter, Barton & Co.* of *Lewiston*, and received his pay therefor from the plaintiff. The defendant then offered in evidence sundry receipts, signed by *James L. Barton*, for *Porter, Barton & Co.*, and several receipts, signed by *James Kirby*, for

*Thomas Clark,* for salt, marked *J. B.* and *J. Bracket,* and offer- ed to prove the handwriting of the persons who subscribed them. This testimony was objected to by the plaintiff's counsel as im proper, without the production of the agents themselves as wit- nesses; and the judge rejected the evidence. The defendant then moved for a nonsuit, on the ground that a breach of the contract was not proved; but the judge refused the nonsuit, and charged the jury, that a breach of the contract was sufficiently proved, and that the measure of damages which the plaintiff was entitled to recover, was the difference in the value of 400 bar- rels of salt at *Oswego,* and the value of the same at *Queenston,* on the 1st of *September,* 1809, and the jury accordingly found a verdict for the plaintiff for eight hundred dollars.

The defendant moved for a new trial, and the case was sub- mitted to the court without argument.

*Per Curiam.* The testimony in the case shows, that several vessels, under the charge of the defendant, sailed from *Oswego* after the contract was entered into with the plaintiff, and before any information was received at that place of the non-inter- course law between the *United States* and *Great Britain,* and no reason whatever is assigned, why the plaintiff's salt was not transported. The evidence does not show, in any manner, a performance of the contract by the defendant, or any excuse for the non-performance. The case is very imperfectly drawn, or must have been very obscurely explained upon the trial. Whe- ther the testimony of *Richmond,* and of *Hugarin,* as to the trans- portation and delivery of salt of the plaintiff's to *Thomas Clark* of *Queenston,* and to *Porter, Barton & Co.* of *Lewiston,* has any relation to the four hundred barrels mentioned in the special agreement, is entirely unexplained. The defendant, according to the facts stated in the case, has failed to perform his contract, in the transportation of the salt, and if so, the rule of damages adopted by the judge was no more than giving to the plaintiff an indemnity for the injury sustained by the breach of contract by the defendant. He has recovered no more than the difference between the value of his salt at *Oswego,* from whence it was to be taken, and at *Queenston,* the place to which it was to be car- ried. Whether the evidence of the handwriting to the receipts offered in evidence was properly rejected, is unimportant; these receipts do not appear to have any connection with this trans-

NEW-YORK, action, from any thing disclosed in this case. The motion for
May. 1817. a new trial must accordingly be denied.