## BRIDGMAN v. THE STEAMBOAT EMILY.

18    509
130    261

1. **Common carrier:** MEASURE OF DAMAGES. The defendant made a contract with the plaintiff for the carriage and transportation of certain wheat, oats and corn from Council Bluffs to St. Louis, at a stipulated price per sack; and refused to receive and transport the same according to the terms of such contract: *Held,* That in the absence of any showing that if the grain had been received according to the contract of affreightment it would not have reached, without delay and in safety, the port of delivery, that the violation of the contract was not willful, or that the plaintiff could, with ordinary care, have found another conveyance, the measure of damages was the difference between the value of the grain in Council Bluffs and St. Louis at the time the contract should have been performed, less the contract price of affreightment.

2. —— GENERAL RULES AND SPECIAL CASES. The measure of damages against carriers is liable to be varied by special circumstances, the object being to do full justice and afford compensation, but nothing more, to the party injured.

3. **Presumptions:** INSTRUCTIONS. The presumptions are in favor of the correctness of the instructions given on the trial by the court below.

*Appeal from Johnson District Court.*

THURSDAY, JUNE 8.

CONTRACT OF AFFREIGHTMENT: MEASURE OF DAMAGES FOR CARRIER'S FAILURE TO RECEIVE AND DELIVER FREIGHT. — The petition alleges that the defendant, as a common carrier, by its master, made a contract with the plaintiff for the transportation of certain wheat, oats and corn from Council Bluffs, Iowa, to St. Louis, Missouri, at the rate of twenty cents per sack. Breach: that the defendant failed and refused to receive and transport the grain, according to the contract. During the delay thus caused, it is averred that freights advanced seven and one-half cents on the bushel; that the grain was damaged, and declined in price in St. Louis, the market for which it was destined.

"The plaintiff further says, that the market price of wheat in Council Bluffs, on the 26th day of March, 1860 (the date of breach), and for ten days thereafter, was from 65 to 80 cents per bushel, and the market price of wheat in St. Louis, on the 26th day of March and for ten days thereafter, at which time the freights would have arrived there, if the same had been shipped when agreed, was $1.72 per bushel, to the plaintiff's damage," &c. It is on these allegations that the questions made turn.

Issue was taken on the petition, trial to jury, and verdict for plaintiff.

The error assigned relates to the instructions respecting the measure of damages. Defendant appeals.

*C. C. Cole* (with whom *Frank. Street*) and *C. Baldwin* for the appellant.

*Douglass & Clinton* for the appellee.

Bridgman v. The Steamboat Emily.

DILLON, J.—The court charged the jury that if, under the law and the evidence, they found for the plaintiff, they would, in assessing his damages, observe the following rules:

**1. COMMON CARRIER: measure of damages.**

1st. They must find, from the evidence, the price of wheat at Council Bluffs on or about the 6th day of April.

2d. They must find, from the evidence, the price of grain in St. Louis, on or about the 6th day of April.

3d. They must take the difference in the price of wheat at Council Bluffs and the price at St. Louis; from this difference deduct the agreed price of carriage; and the balance will be the damage due the plaintiff.

The defendant's counsel concedes that the above rules are correct, in cases where the carrier *actually receives* the article to be transported, and fails to deliver the same at the place of destination; but he claims that where, as in the case at bar, the carrier fails or refuses to receive the article, and never does receive it, the above rules have no application, and that, in the latter case, the carrier is liable in damages only for the advance in the price of transportation.

The verdict establishes the existence of the contract—a contract by the defendant directly, without intermediate agencies or boats—to deliver the grain, an article having a market value, at the place of destination. It is not shown that the grain, if it had been received according to the contract of affreightment, would not have reached without delay, or in safety, the port of delivery. A market *via* the river, we may properly notice, is, at least for a large portion of the way, the only one open to shippers and owners of grain at Council Bluffs. It does not appear but that the violation of the contract by the defendant was willful. Under these circumstances, we are clear that the rule of damage laid down by his honor, the district judge, was correct; and that ruling is affirmed.

It is proper to observe, that, aside from the special circumstances, the rule adopted is in exact accord with the doctrine established by the Supreme Court of New York (*Brackett* v. *McNair*, 14 Johns., 170 [1817], with which *Ogden* v. *Marshall*, 4 Seld., 340 [1853], does not conflict); by the Supreme Court of Pennsylvania (*O'Connor* v. *Foster*, 10 Watts, 418); and approved in the text of Sedgwick on Damages (marg., 356, 358, top, 3d ed., 372, 374), and of Angell on Carriers (§ 482, *et seq.*); but see reviewing cases, *Lakeman* v. *Grinnell*, 5 Bosw. (N. Y.), 625, and conflicting cases in 22 Barb., 278, and 29 Id., 633.

The defendant did not show, at least so far as disclosed by the record, that, by the exercise of ordinary care, the plaintiff *could* have obtained or found another conveyance. Had this been established, the rule contended for by the defendants (measuring and limiting the damages by the advance in the freight, unless other damages are shown), would, under the above authorities, have been the proper one.

2. —— general rules and special cases. These are the general rules. But these are not inflexible; and the measure of damages against carriers is liable to be varied, as an examination of the adjudicated cases will show, by special circumstances, the object being to do justice, and to afford full compensation, and no more, to the party injured. Again, the defendant objects to the charge, because it instructs the jury to find the value of the wheat on a *fixed* day. The complaint is, that the day on which the boat would arrive, would be for the jury to find. Strictly speaking, this is so; but, under the pleadings, and in the absence of evidence, we cannot, on this objection, reverse the judgment.

The presumption is in favor of the correctness of the charge. It may have been a conceded fact on the trial, 3. PRESUMP-TIONS: instructions. that the boat which should have taken the plaintiff's grain did, in fact, reach St. Louis on the day named in the instructions. The evidence, if here,

would, doubtless, show — at least, the appellate court must so presume — that the action of the court below, in naming a day certain, was not unauthorized.     Affirmed.

COLE, J., having been of counsel, took no part in the decision.